IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **The Estate of Marquette F. Cummings, Jr., AND Angela Gaines, individually,** ) <br> (Plaintiffs) ) <br> ) <br> **VS.** ) <br> ) <br> ) <br> **Commissioner Kim Thomas, individually, and in** ) <br> **his official capacity as Commissioner of** ) <br> **ADOC; Commissioner Jefferson S. Dunn,** ) <br> **individually, and in his official capacity as** ) <br> **Commissioner of ADOC; Warden Carter** ) <br> **Davenport, individually, and in his official** ) <br> **capacity as Warden of St. Clair Correctional** ) <br> **Facility; Unnamed Defendants A-C, individually,**) <br> **and in their official capacities as members of the** ) <br> **Enemy Validation Committee of ADOC;** ) <br> **Unnamed Defendants D-H, individually, and in** ) <br> **their official capacities as members of the** ) <br> **Institutional Segregation Review Board at** ) <br> **ADOC; Unnamed Defendants I-L, individually,** ) <br> **and in their official capacities as Corrections** ) <br> **Officers assigned to St. Clair Correctional** ) <br> **Facility, University of Alabama at Birmingham** ) <br> **Hospital, Unnamed Defendants M-V,** ) <br> i**ndividually and in their official capacities as** ) <br> **medical personnel at UAB Hospital, Doctor** ) <br> **Sherry Melton**, ) <br> (Defendants) | Case#_____ <br><br> **PLAINTIFF DEMANDS JURY TRIAL** |

**COMPLAINT**

NOW INTO COURT, **Plaintiffs, THE ESTATE OF MARQUETTE F. CUMMINGS,**

**JR., AND ANGELA GAINES,** through the undersigned counsel, assert the following:

**I. JURISDICTION**

The jurisdiction of this Court is invoked pursuant to the Acts of Congress known as 28

U.S.CA §1331, as this case involves the violation of the laws of the United States, specifically the

Eighth Amendment of the United States Constitution and 42 U.S.C.A. §1983. Furthermore, this Court also has supplemental jurisdiction to hear state law claims under Alabama law pursuant to 28 U.S.C.A. §1367, as all of the state law claims mentioned throughout this complaint arise out of the same transaction or occurrence as the violations of federal law.

## II. PARTIES

1. **Plaintiff, The Estate of Marquette F. Cummings, Jr., by and through its Executor, Victor Revill,** who is a citizen of the United States and the State of Alabama.

2. **Plaintiff Angela Gaines**, who is a citizen of the United States and the State of Alabama.

3. Made defendants herein are:

   (a) **Defendant Commissioner Kim Thomas**, in his individual capacity and in his official capacity as Commissioner for the Alabama Department of Corrections. He is a person subject to suit under 42 U.S.C.A. §1983.

   (b) **Defendant Commissioner Jefferson S. Dunn**, in his individual capacity and in his official capacity as Commissioner for the Alabama Department of Corrections. He is a person subject to suit under 42 U.S.C.A. §1983.

   (c) **Defendant Warden Carter Davenport**, in his individual capacity and in his official capacity as Warden for St. Clair Correctional Facility, a facility which is a part of the Alabama Department of Corrections system. He is a person subject to suit under 42 U.S.C.A. §1983.

(d) **Defendants, Unnamed Defendants A-C**, individually, and in their official capacities as members of the Enemy Validation Committee at St. Clair Correctional Facility. These individuals are subject to suit under 42 U.S.C.A. §1983.

(e) **Defendants, Unnamed Defendants D-H**, individually, and in their official capacities as members of the Institutional Segregation Review Board at St. Clair Correctional Facility. These individuals are subject to suit under 42 U.S.C.A. §1983.

(f) **Defendants, Unnamed Defendants I-L**, individually, and in their official capacities as corrections officers for ADOC assigned to St. Clair Correctional Facility. These individual are subject to suit under 42 U.S.C.A. §1983.

(g) **Defendant, University of Alabama at Birmingham (UAB) Hospital**, is a corporate entity licensed to do business in the State of Alabama.

(h) **Defendants, Dr. Sherry Melton**, individually, and in her official capacity as medical supervisor at UAB Hospital at the time of the acts that led to the cause of actions of this complaint. She is a person subject to suit under The Alabama Medical Liability Act of 1987.

(i) **Defendants, Unnamed Defendants, M-V**, individually, and in their official capacities as medical personnel at UAB Hospital who while working in the course and scope of their employment at all times pertinent to these actions that made vital decisions regarding the care of the deceased.

### III. FACTUAL OVERVIEW AND PROCEDURAL HISTORY

4. The deceased, Marquette F. Cummings, Jr., ("Cummings") was an inmate at St. Clair Correctional Facility ("St. Clair") in Springville, Alabama.

5. During the weekend of January 3-5, 2014, Cummings witnessed a physical altercation involving inmate Timothy Gayle. Following that altercation, Cummings and Gayle were involved in an incident that required that both inmates be separated by St. Clair Correctional Officers.

6. On Monday, January 6, 2014, at approximately 7:40 a.m., Gayle stabbed Cummings in his eye with a weapon made by Gayle known as a "shank" and Cummings began to bleed profusely. Several inmates helped Cummings to the infirmary at St. Clair Correctional Facility where he was then quickly air lifted to UAB Hospital in Birmingham.

7. Cummings was initially admitted to the Emergency Room and was later transferred to the Intensive Care Unit (ICU).

8. While Cummings was transported to UAB at approximately 8:00 a.m. on January 6, 2014, Plaintiff, Angela Gaines was informed that Cummings, her son, had been stabbed.

9. Ms. Gaines immediately called St. Clair multiple times to verify this information with prison officials, but was unable to speak with a live person until several hours later into the afternoon. When the Defendant Warden Davenport finally returned Ms. Gaines' phone call, he informed Ms. Gaines that her son, Cummings was involved in "an incident," that he had been stabbed, and that he was being transported to a hospital for medical treatment at the present time, however Cummings was air lifted that morning to UAB.

10.     Ms. Gaines asked Warden Davenport at which hospital her son would be taken to and Warden Davenport responded that he could not disclose this information, but stated he would call her back with more information.

11.     After several more hours waiting for Defendant Davenport to notify Plaintiff Gaines of the whereabouts of her son, Warden Davenport finally informed Ms. Gaines that Cummings was being treated at UAB Hospital.

12.     When Ms. Gaines arrived, her pleas to see her injured son were repeatedly denied. She was asked to wait at least ninety (90) minutes before she was able to see him. Despite the several hour delay in notifying Ms. Gaines of her son's situation, and in addition to several more hours of delay to inform Ms. Gaines of her son's location, she was told she would have to wait ninety (90) more minutes to be able to see her son.

13.     The hospital staff finally informed Ms. Gaines about the incident where Cummings had been stabbed in the eye and that, due to his injuries, <u>he was only operating with 10% of normal brain functioning</u>.

14.     Despite this statement by Defendant UAB's personnel, Cummings would continually respond to verbal cues from Ms. Gaines, such as when she asked him to "blink if you can hear me," Cummings complied to his mother's request every time.

15.     The Defendant UAB's medical personnel declared Cummings a non-survivor shortly after his arrival with the medical records stating that "no heroic measures" would be taken to try to save his life.

16.     In fact, Defendant Melton changed Cumming's code status at or around 9:17 p.m. on January 6, 2014 without any authorization from the family or notifying the family of such decision.

17.     Instead of following standard operating procedure, Defendant Melton relied upon the statements of Defendant Davenport, a non-family member and not a legal guardian, to place Cummings on a code to not allow for resuscitation under any circumstances, this is commonly known as Do Not Resuscitate or "DNR".

18.     Defendant Melton changed Cummings code status at or about 24 hours before a brain death study was even ordered.

19.     Ms. Gaines and several family members were present at the hospital throughout the time of Cummings's treatment.

20.     UAB medical personnel informed Ms. Gaines that Warden Davenport authorized UAB medical personnel to stop giving Cummings medication and to disconnect the life support machine.

21.     Pursuant to Warden Davenport's directive, UAB medical personnel made the decision to "Do Not Resuscitate" Cummings under any circumstances.

22.     Cummings's mother, Ms. Gaines made her wishes known that her son was to remain on life support. Ms. Gaines repeatedly begged that that her son remain on life support because he was still breathing and responding to verbal commands.

23. The UAB medical personnel repeatedly conveyed that "it was not her (Ms. Gaines') call" because that the State had legal custody over Cummings and that the decision to let her son die was the Warden's decision. Based on this directive from Warden Davenport, Cummings was taken off of life support and he passed away just hours after removal.

24. Cummings stopped breathing at 7:05 p.m. on January 7, 2014.

25. Defendant Davenport's directive caused UAB medical personnel to not provide sufficient and adequate care to Cummings. Defendant Davenport had both objective and subjective knowledge that in emergencies, medical personnel need to have the flexibility to do all that is possible to save a human's life, and without such flexibility, a significant risk of danger was created for Cummings. Thus, Warden Davenport disregarded this risk to Cummings by ordering UAB medical personnel to not do anything "heroic" nor to resuscitate Cummings. Such disregard amounts to deliberate indifference to the safety, health, and well-being of Cummings in violation of the Eighth Amendment.

26. Defendant Melton and Unnamed Defendants "A"-"M" actions, or lack there-of, contributed to the denial of access to appropriate medical care and failed to follow proper protocol when addressing or reviewing "DNR" orders.

## IV. CAUSES OF ACTION

### CLAIMS AGAINST ADOC AND ITS EMPLOYEES

#### A. 42 U.S.C.A. §1983-EIGHTH AMENDMENT VIOLATION

27. Plaintiffs re-allege the aforementioned factual allegations and incorporate them by reference in this claim

The Estate of Marquette F. Cummings, Jr., et al. v. Commissioner Kim Thomas, et al
Bill of Complaint
Page | 8

28. A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. A prison official's duty is to protect prisoners from violence at the hands of other prisoners. While every injury suffered by one inmate at the hands of another is not a constitutional violation, an Eighth Amendment violation occurs when a substantial risk of serious harm, when the official is subjectively aware, exists and when the official does not respond reasonably to the risk. As stated above, the fatal stab wounds Cummings sustained were the result of an altercation at St. Clair Correctional Facility. Cummings was made the target for violence because of the initial altercation between him and the offending inmate, Gayle. After this initial altercation, Cummings and Gayle were not supposed to be in the same area. They were supposed to be separated. The prison staff, including Warden Davenport and the unnamed corrections officers assigned to the area, had both objective and subjective knowledge that the offending inmate posed a significant risk of danger to Cummings. They disregarded this risk to Cummings by allowing the violent inmate and Cummings to be in the same vicinity. Such disregard amounted to a deliberate indifference to the safety, health, and well-being of Cummings in violation of the Eighth Amendment. Because of this indifference Cummings was violently attacked causing Cummings's death. Consequently, **Warden Carter Davenport, and the unnamed officers assigned to the area where Cummings and the offending inmate were housed are liable under 42 U.S.C.A. §1983 for this Eighth Amendment claim**.

29. ADOC employees' failure to adhere to policy also constitutes an Eighth Amendment violation under the same theory. As stated above, Cummings was targeted for violence because of the initial altercation between him and the offending inmate. After this initial altercation, Cummings and the inmate were not supposed to be in the same area and were supposed to be separated. ADOC Administrative Regulation 435 ("AR-435") (Protective

Custody) states: "It is the policy of ADOC to provide a form of separation from the general population for inmates requesting *or requiring* protection from other inmates for reasons of safety and well-being. AR-435 further provides that the "Enemy Validation Committee" is a committee composed of the Classification Supervisor/Specialist (name unknown), the Warden or his designee, and another member from the security staff. This committee is vested with the responsibility of verifying enemy situations. AR-435 further provides that "the Warden (Davenport) is responsible for developing and implementing standard operating procedures for enforcing AR-435 in a prison facility. Lastly, AR-435 also provides that "the Warden or his designee may place an inmate in protective custody based upon creditable information received concerning the safety and welfare of an inmate or for reasons of institutional security.

30. ADOC also promulgates Administrative Regulation 436 ("AR-436") (Institutional Segregation Review) which provides that the "Institutional Segregation Review Board is a committee comprised of the Warden (Davenport), Classification Supervisor, and Chaplain, or alternates for the purpose of reviewing the status of inmates assigned to segregation. This Board is vested with the responsibility of ensuring that inmates requiring segregation from the general population or specific inmates are to remain segregated until the threat of danger or violence is eliminated.

31. In the news release attached hereto as Exhibit "A", a spokesperson for ADOC stated that Cummings was involved in an incident over the weekend with the offending inmate and that the subsequent stabbing and death was a continuation of this incident. The spokesperson also stated that the suspected offending inmate was a "convicted killer." Plaintiffs aver that these statements are admissions made by someone with authority to speak for the organization (ADOC) and, specifically, St. Clair Correctional Facility and its personnel. These statements are

admissions that the staff at St. Clair Correctional Facility had subjective knowledge <u>based upon creditable information</u> that Cummings was the target of a convicted killer and that nothing was done to protect his safety and well-being from the violent hands of this killer. Cummings was not placed in protective custody and, although St. Clair Correctional Facility's employees had subjective knowledge that Cummings was the target of violence, neither the offending inmate, Gayle, or Cummings was segregated from the general population, nor was Cummings placed in protective custody, and the Board failed to assess this situation properly to ensure that Cummings and the offending inmate, Gayle remain separated. **Consequently, Warden Davenport, and the unnamed members of the Enemy Validation Committee and the Institutional Segregation Review Board at St. Clair are all liable for this claim**.

32. Not only are the above mentioned Defendants liable for the injuries that occurred prior to Cummings being taken to the hospital, there were constitutional violations even after his transportation to UAB Hospital. Deliberate indifference can be manifested by prison personnel intentionally denying or delaying access to medical care, by prison personnel interfering with prescribed treatment, or by prison doctors responding indifferently to a prisoner's medical needs. The prison staff, including Warden Davenport and the unnamed corrections officers assigned as detail at UAB Hospital, had both objective and subjective knowledge that Cummings' condition was severe and in significant risk of danger if he was not provided proper treatment and, thus, disregarded this risk to Cummings by interfering with the ability of UAB medical personnel to provide proper treatment. Such a disregard amounted to a deliberate indifference to the safety, health, and well-being of Cummings in violation of the Eighth Amendment. Consequently, **Warden Carter Davenport is liable under <u>42 U.S.C.A. §1983</u> for this Eighth Amendment claim**.

### B. 42. U.S.C.A. §1983-FAILURE TO TRAIN AND NEGLIGENT SUPERVISION

33.     Plaintiffs re-allege the aforementioned factual allegations and incorporate them by reference in this claim.

34.     A Plaintiff states a claim under §1983 for the failure to train officers and the negligent supervision of those officers if he/she alleges evidence of a widespread history of prior similar acts OR that the constitutional deprivation is the result of a policy or custom adopted by the entity as a whole. As stated above, ADOC has administrative regulations designed to prevent violence and death for inmates like Cummings. However, Plaintiffs aver as an alternative theory that these regulations are only designed to be executed during business hours Monday through Friday and that ADOC and St. Clair Correctional Facility have adopted a *de facto* policy of not responding to such incidents which occur over the weekend. Thus, incidents that occur over the weekend are not adequately responded to. ADOC and St. Clair Correctional Facility, through Warden Davenport, have failed to train its employees on how to respond to altercations which occur over the weekends and to properly place inmates in protective custody or disciplinary segregation for altercations that occur over the weekend. ADOC and St. Clair Correctional Facility, through Warden Davenport, have also failed to adequately supervise both the staff AND the inmates as it pertains to incidents that occur over the weekend. Because of this failure, Cummings was not placed in protective custody nor was Gayle, the offending inmate, placed in disciplinary segregation despite the prison staff having subjective knowledge that this inmate posed a significant threat to the safety, health, and well-being of Cummings. Weekend stabbings and altercations have been allowed to escalate in the early parts of the following weeks (Mondays and Tuesdays) and because of this policy of not responding to such incidents effectively, this

failure resulted in the death of Cummings. **Consequently, Commissioner Kim Thomas, Commissioner Jefferson S. Dunn, Warden Davenport, the unnamed corrections officers assigned to the area where these incidents occurred, and the unnamed members of the Enemy Validation Committee and the Institutional Segregation Review Board at St. Clair are all liable for this claim**.

### C. STATE LAW WRONGFUL DEATH

35. Plaintiffs re-allege the aforementioned factual allegations and incorporate them by reference in this claim.

36. Under Alabama's Wrongful Death Statute, persons whose acts or omissions proximately cause the death of an individual may be liable for the decedent's death. As stated above, ADOC and St. Clair's Correctional Facility staff failed to properly separate Cummings from the Gayle, the offending inmate, and failed to place Gayle, the offending inmate in disciplinary segregation, recklessly disregarding the threat of danger to the safety and well-being of Cummings, despite having subjective knowledge that he was the target of violence of a convicted killer, and failed to train and supervise the employees and inmates to the degree that constitutes a ADOC and St. Clair Correctional Facility policy or custom of not adequately responding to incidents which occur over the weekend. **Consequently, Commissioner Kim Thomas, Commissioner Jefferson S. Dunn, Warden Davenport, the unnamed corrections officers assigned to the area where these incidents occurred, and the unnamed members of the Enemy Validation Committee and the Institutional Segregation Review Board at St. Clair are all liable for this claim**.

## CLAIMS AGAINST UAB HOSPITAL AND STAFF

### D. STATE LAW OUTRAGE CLAIM

37. Plaintiffs re-allege the aforementioned factual allegations and incorporate them by reference in this claim.

38. A Plaintiff states a cause of action for outrage when the conduct is 'so outrageous in character and as extreme in degree as to go beyond all possible bounds of decency, and is regarded as atrocious and utterly intolerable in a civilized society. A person who, by extreme or outrageous conduct, intentionally or recklessly causes severe emotional distress can be liable for the tort of outrage. As stated above, the medical personnel at UAB Hospital made the decision to not resuscitate Cummings and also to disconnect him from life support despite the protests of his mother, Angela Gaines, and despite the fact that he was responding to her verbal commands. It was the expressed wish of Ms. Gaines that her son be kept alive. She repeatedly and emphatically communicated this to the UAB medical personnel attending to Cummings. These unnamed individuals repeatedly informed Ms. Gaines that "it was not her call" because her son, Cummings, was in prison at the time of his stabbing. The UAB medical personnel circumvented the wishes of the family and elected to end the life of Mr. Cummings in front of his mother and relatives. UAB medical personnel also noted in the medical records that "no family was present" to make end-of-life decisions regarding Cummings when in fact Ms. Gaines and several other relatives were present and expressed that Cummings be kept alive. Such conduct is extreme, outrageous, and intolerable in a civilized society. **Consequently, Defendant Melton, the unnamed medical personnel who were involved with the care of Cummings, UAB Hospital, AND Warden Davenport are liable for this claim**.

## E. STATE LAW NEGLIGENCE CLAIM UNDER

## THE ALABAMA MEDICAL LIABILITY ACT

39.     Plaintiffs re-allege the aforementioned factual allegations and incorporate them by reference in this claim.

40.     As stated above, the medical personnel at UAB Hospital made the decision to not resuscitate Cummings and also made the decision to disconnect him from life support despite the protests of his mother, Angela Gaines, and despite the fact that he was responding to her verbal commands. It was the expressed wish of Ms. Gaines that her son be kept alive and she repeatedly and emphatically communicated this to the UAB medical personnel. These unnamed individuals repeatedly informed her that "it was not her call" because her son, Cummings, was in prison at the time of his stabbing. The UAB Hospital medical personnel circumvented the wishes of the family and elected to end the life of Mr. Cummings in front of his mother and relatives. They also noted in the medical records that "no family was present" to make end-of-life decisions regarding Cummings when in fact Ms. Gaines and several other relatives were present and expressed that Mr. Cumming be kept alive. This was proximately caused by the negligent training of UAB Hospital insofar that its medical staff was not properly trained or supervised on how to manage or conduct end-of-life procedures. Experienced medical providers who are similarly situated will attest that the accepted medical standard for handling such situations would be to defer to the wishes of the family. This standard was not followed and it resulted in the death of Mr. Cummings. **Consequently, UAB hospital and its medical training staff (names to be provided upon knowledge) are liable for this claim**.

## V.     DAMAGES

41. Cummings died as the result of the acts and omissions of the Defendants. Additionally, Plaintiff, Angela Gaines has suffered extreme emotional distress from seeing the life of her son taken before her very eyes. The Defendants, jointly and severally, are liable for these damages.

## PRAYER FOR RELIEF

Based on the legal and factual assertions stated in this Complaint, **Plaintiffs** request the following relief:

a) That this Court render a judgment finding ALL the Defendants named herein jointly and severally liable for the aforementioned causes of action;

b) That this Court issue an Order requiring the Defendants to pay the Plaintiffs compensatory and punitive damages;

c) That this Court issue an Order requiring the Defendants to pay for all litigation costs, expenses, and reasonable attorney's fees associated with the filing of this action;

d) Any other relief that the Plaintiffs may be entitled to.

## JURY TRIAL DEMANDED

42. Plaintiff requests a trial by jury.

DATED this the 16th day of December, 2015.

    /s/ Justin Mitchell
Justin Mitchell, Esq. AOC# JAM066
Attorney for the Plaintiff

**Of-Counsel:**
**The Revill Law Firm**

The Estate of Marquette F. Cummings, Jr., et al. v. Commissioner Kim Thomas, et al
Bill of Complaint
Page | 16

2027 2nd Avenue North
Bradford Building, Suite A
Birmingham, Alabama 35203
(205) 521-9929
Jmitchell@revilllawfirm.com



**SERVE DEFENDANTS BY CERTIFIED MAIL**

Jefferson S. Dunn, Commissioner
Kim Thomas, Commissioner
c/o Alabama Department of Corrections
ATTN: Legal Division
301 Ripley Street
P.O. Box 301501
Montgomery, Alabama

The University of Alabama System
Dr. Sherry Melton
c/o Office of Risk Management
401 Queen City Avenue
Tuscaloosa, Alabama 35401