# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF MARQUETTE F. CUMMINGS, JR. and ANGELA GAINES, <br><br>  Plaintiffs, <br><br> v. <br><br> CARTER DAVENPORT, in his official and individual capacities, <br><br>  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 2:15-cv-02274-JEO |

## MEMORANDUM OPINION[1]

This action arises from the death of Marquette F. Cummings, Jr., who was an inmate at St. Clair Correctional Facility. (Doc. 29 "Am. Compl."). Plaintiffs, the Estate of Marquette F. Cummings, Jr., by and through its Executor, Victor Revill, (the "Estate") and Angela Gaines, Mr. Cummings's mother, (collectively, "Plaintiffs") assert various state and federal claims against Carter Davenport, the former warden of St. Clair Correctional Facility ("Warden Davenport"), in his official and individual capacities. (*Id.*). Currently pending before the court is Warden Davenport's Motion to Dismiss the Amended Complaint. (Doc. 32). The parties have briefed the motion. (Docs. 32 & 34). Upon consideration, and as discussed below, the court finds the Estate's § 1983 claim against Warden Davenport based on deliberate indifference to Cummings's serious medical needs in violation of the Eighth Amendment survives the Warden's motion to dismiss, and this claim may proceed. All of Plaintiffs' remaining claims are due to be dismissed.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 25).

I.     **PROCEDURAL POSTURE**

Plaintiffs initiated this action on December 15, 2015, asserting various federal and state claims against the following defendants: Kim Thomas and Jefferson Dunn, Commissioners for the Alabama Department of Corrections ("ADOC"); Warden Davenport; the University of Alabama at Birmingham Hospital ("UAB Hospital"); Dr. Sherry Melton, a medical supervisor at UAB Hospital; and various unnamed defendants associated with the ADOC or UAB Hospital. (Doc. 1). In their Complaint, Plaintiffs asserted the following claims against Warden Davenport in his individual and official capacities: (1) § 1983 claims for deliberate indifference in violation of the Eighth Amendment; (2) a § 1983 claim for failure to train and negligent supervision based on the failure to protect Cummings from harm; and (3) a state law wrongful death claim. (Doc. 1).

The original defendants in this action filed motions to dismiss Plaintiffs' claims against them. (Docs. 8, 12 & 14). For his part, Warden Davenport argued that the claims against him were due to be dismissed under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs failed to state plausible claims against him and because the claims were barred by sovereign immunity and qualified immunity. (Doc. 8).

Upon consideration of the defendants' motion, the court found that all of Plaintiffs' claims were due to be dismissed, with the exception of the Estate's § 1983 claim against Warden Davenport in his individual capacity based on deliberate indifference to Mr. Cummings's serious medical needs. (Doc. 28). Accordingly, the court entered an order granting in part and denying in part the ADOC defendants' motion to dismiss, and dismissing the following claims asserted against Warden Davenport: (1) all of the claims asserted by Ms. Gaines; (2) all of the claims asserted against the Warden in his official capacity; (3) a § 1983 claim for deliberate indifference

in violation of the Eighth Amendment based on the failure to protect Cummings from harm; (4) a § 1983 claim for failure to train and negligent supervision based on the failure to protect Cummings from harm; and (5) a state law wrongful death claim. (*See id.*).

After the court entered its order dismissing most of Plaintiffs' claims, Plaintiffs filed an Amended Complaint on October 5, 2016, asserting claims against only Warden Davenport. (Doc. 29). The Amended Complaint includes several new allegations regarding ADOC policies and Warden Davenport's knowledge of a threat to Cummings's safety. (*See id.*, ¶¶ 5-6, 29-30, 36, 38). In the Amended Complaint, Plaintiffs reassert claims against the warden that the court previously dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).[2] (*See* Docs. 28 & 29). Thus, Plaintiffs' Amended Complaint implicitly seeks partial relief from, or reconsideration of, the court's Memorandum Opinion and Order granting in part and denying in part the ADOC Defendants' motion to dismiss. Therefore, to the extent that Plaintiffs' Amended Complaint includes new allegations and reasserts claims against Warden Davenport that were previously dismissed with prejudice, the court construes the Amended Complaint as a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure and treats the new allegations as newly-discovered evidence. On that basis, the court will reconsider the issues raised by Warden Davenport's motion to dismiss and Plaintiffs' opposition to the motion.

## II. STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Pleadings that contain nothing more than "a formulaic recitation of the elements

---

[2] Warden Davenport moved to dismiss all of the claims asserted against him in the Amended Complaint, but he did not raise a specific objection to the assertion of claims that the court previously dismissed with prejudice. (*See* Doc. 32).

3

of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 557 (2007).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To meet the requirements of Rule 8(a)(2) and survive a motion to dismiss, "a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Adinolfe v. United Tech. Corp.*, 786 F.3d 1161, 1169 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555 & 570). "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of the claim . . . and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). When deciding a motion to dismiss, the court must assume the truth of the factual allegations in the complaint and give the plaintiff the benefit of all reasonable factual inferences. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Legal conclusions couched as factual allegations are not entitled to the same assumption of veracity. *Iqbal*, 556 U.S. at 678.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action when the court finds that it does not have subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). Facial challenges to subject matter jurisdiction, such as the challenges presented in this action, are based solely on the allegations in the complaint. *Id.* "When

considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.*

Finally, the decision to alter or amend a judgment pursuant to Rule 59(e) is within the sound discretion of the district court. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (citing *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006). "While, as a rule, parties are not entitled to two bites at the apple, there are occasions in which reconsideration should be entertained." *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) (quotation and internal quotation marks omitted). "The only grounds for granting a rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur*, 500 F.3d at 1343 (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999) (alteration in original omitted).

## III.  FACTUAL BACKGROUND

Marquette F. Cummings, Jr. was an inmate at St. Clair Correctional Facility in Springville, Alabama ("St. Clair"). (Am. Compl. ¶ 3). During the weekend of January 3-5, 2014, Cummings witnessed "a physical altercation" between Timothy Gayle[3] and another inmate at St. Clair. (*Id.* ¶ 4). "Following that altercation, Cummings and Gayle were involved in an incident that required that both inmates [to] be separated by St. Clair Correctional Officers." (*Id.*).

Plaintiffs allege that pursuant to ADOC Administrative Regulation 300 ("AR-300") and ADOC Administrative Regulation 302 ("AR-302"), officers completed a report about the first altercation involving Gayle and a report about the altercation between Cummings and Gayle. (*Id.* ¶ 5). According to Plaintiffs, both reports were given to Warden Davenport immediately after the altercations. (*Id.*). Plaintiffs also allege that after the altercations and "administratively

---

[3] Timothy Gayle is an inmate at St. Clair who was convicted of murder. (*See* Doc. 29-1 at 1).

5

required reporting," Gayle and Cummings were not put into protective custody, put in separate dorms, or otherwise separated from one another. (*Id.* ¶ 6).

Following the weekend incident or altercation, Gayle stabbed Cummings in the eye with a shank at approximately 7:40 a.m. on Monday, January 6, 2014, causing Cummings to bleed profusely. (*Id.* ¶ 7; Doc. 29-1 at 1). Other inmates helped Cummings to the infirmary at St. Clair, and he was quickly airlifted to UAB Hospital for treatment. (*Id.*). After Angela Gaines learned her son had been stabbed and where he was taken for treatment, she went to UAB Hospital to be with Cummings sometime during the afternoon of January 6. (*See id.* ¶¶ 9-13).

Dr. Sherry Melton, a medical supervisor at UAB Hospital, changed Cummings's code status to Do Not Resuscitate ("DNR") at about 9:17 p.m. on January 6, 2014 without authorization from Gaines or any other family member and without notifying Gaines and Cummings's family of the decision. (*Id.* ¶ 17; Doc. 1 ¶ 3(h)). Plaintiffs allege that Dr. Melton relied upon statements from Warden Davenport to change Cummings's code status to DNR even though Gaines and several other family members were at the hospital. (Am. Compl. ¶¶ 18 & 20). Plaintiffs further allege that "Warden Davenport authorized UAB medical personnel to stop giving Cummings medication and to disconnect the life support machine." (*Id.* ¶ 21).

Plaintiffs allege that contrary to Gaines's wishes, and "[b]ased on [the] directive from Warden Davenport, Cummings was taken off of life support . . . ." (*Id.* ¶ 24). Cummings passed away at 7:05 p.m. on January 7, 2014, just hours after UAB medical personnel removed his life support. (*Id.* ¶¶ 24-25).

IV. <u>ANALYSIS</u>

Based on the facts set forth above, Plaintiffs assert the following claims against Warden Davenport in both his individual and official capacities: (1) § 1983 claims for deliberate

6

indifference in violation of the Eighth Amendment; (2) a § 1983 claim for failure to train and negligent supervision based on the failure to protect Cummings from Gayle; and (3) a state law wrongful death claim. (Am. Compl.). Warden Davenport asks this court to dismiss each of the claims against him pursuant to Rules 12(b)(1) and 12(b)(6), arguing that the claims are barred by sovereign and qualified immunity and that Plaintiffs failed to state plausible claims against him. (Doc. 32).

### A. Plaintiffs' Standing to Assert their Claims

This Court previously dismissed the § 1983 claims and wrongful death claims asserted by Gaines against Warden Davenport because she lacks standing to assert the claims. (Doc. 28 at 6-7, 10 & 25-26). Nothing alleged in Plaintiffs' Amended Complaint changes Gaines's lack of standing to assert the claims in this action. Instead, for the reasons discussed in the court's prior order, the pending § 1983 and wrongful death claims can only be asserted by the Estate. *See Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1043 (11th Cir. 2011); *Brown v. Mounger*, 541 So.2d 463, 463-64 (Ala. 1989) (citing Ala. Code § 6-5-410); *see also* (Doc. 28 at 6-7). Thus, to the extent Plaintiffs' claims are asserted by Gaines, they are due to be dismissed.

### B. Official Capacity Claims Against Warden Davenport

The court previously dismissed the official claims asserted against Warden Davenport on the basis of sovereign immunity under the Eleventh Amendment to the United States Constitution and Article I, § 14 of the Alabama Constitution of 1901. (Doc. 28 at 8-9, 25-26). In response to Warden Davenport's motion to dismiss the amended complaint, the Estate now argues that sovereign immunity does not apply in this case because the warden acted in bad faith and because the State waived its Eleventh Amendment Immunity. (Doc. 34 at 15-17). The court is not persuaded.

7

The Estate asserts that its claims against Warden Davenport fall within an exception to the State's sovereign immunity. (Doc. 34 at 15-16). Specifically, the Estate argues that sovereign immunity does not apply to claims for damages against a state official when the official "acted fraudulently, in bad faith, beyond [his] authority, or in a mistaken interpretation of law." (*Id.* at 16 (quoting *Drummond Company v. Alabama Department of Transportation*, 937 So.2d 56 (Ala. 2006)). However, the "exception" to the State's sovereign immunity that the Estate relies upon only applies to actions for injunctive relief against a state official in his official capacity or to actions for damages against a state official in their individual capacity; it does not apply to actions for damages against a state official in his official capacity. *See Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013).[4] Indeed, "it is well established that actions for damages against State agents in their official or representative capacities are considered actions to recover money from the State and are barred by State immunity under [Article I,] § 14" of the Alabama Constitution of 1901. *Id.* at 1140 (citations omitted). In this action, the Estate seeks monetary damages against Warden Davenport, *see* Am. Compl. at 11-12; thus, the claims asserted against Warden Davenport in his official capacity are barred by the State's sovereign immunity.

Moreover, the State of Alabama has not waived its immunity under the Eleventh Amendment. The Estate argues that the State has consented to suit or waived its immunity based on Alabama Code § 41-9-74, which provides that the State will pay final judgments awarded

---

[4] In *Ex parte Moulton*, the Supreme Court of Alabama clarified and restated the exception to State immunity that it set forth in *Drummond* by holding that the "exception" applies only to: "(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, . . . and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the state." 116 So. 3d at 1141.

against members of the Board of Corrections and its employees for acts related to their official duties on behalf of the State. (Doc. 34 at 17). However, § 41-9-74(c) expressly states that "[n]othing in this section shall be deemed to waive the sovereign immunity of the state . . . ." Ala. Code § 41-9-74(c) (1975). After evaluating the language of § 41-9-74, the Eleventh Circuit found that the statute did not express any intent by the State to waive its sovereign immunity and held that the State's sovereign immunity bars suits against Board of Corrections employees in their official capacities. *Williams v. Bennett*, 689 F.2d 1370, 1377-78 (11th Cir. 1982). Therefore, the Estate's argument regarding waiver of Eleventh Amendment immunity is contrary to binding precedent.

Based on the foregoing, and for the reasons stated in the court's prior Memorandum Opinion and Order, the Estate's claims against Warden Davenport in his official capacity are barred by the Eleventh Amendment and due to be dismissed under Federal Rule of Civil Procedure 12(b)(1).

### C. Individual Capacity Claims Against Warden Davenport

Plaintiffs assert multiple claims against Warden Davenport in his individual capacity under § 1983 and state law.[5] (Am. Compl. at 6-11). For the reasons discussed below and in the court's prior Memorandum Opinion and Order, the court concludes the Estate has stated a plausible § 1983 claim against Warden Davenport based upon an alleged Eighth Amendment violation for interfering with Cummings's medical care, and this claim may proceed. The remaining claims against the warden in his individual capacity are due to be dismissed.

---

[5] 42 U.S.C. § 1983 provides a civil action against any person who, "acting under color of state law, committed acts that deprived [Plaintiffs] of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Easley v. Dept. of Corrections*, 590 F. App'x 860, 868 (11th Cir. 2014) (per curiam) (citing 42 U.S.C. § 1983).

### 1. Claims Based on the Failure to Protect Cummings from Gayle

The Estate asserts several § 1983 claims against Warden Davenport in his individual capacity for deliberate indifference based on the failure to protect Cummings from Gayle. (Doc. 29 at 6-11). This court previously dismissed those claims pursuant to Rule 12(b)(6) because the Estate did not allege any facts to show (1) Warden Davenport had subjective knowledge of a substantial risk of serious harm to Cummings, (2) the warden directed correctional officers to act unlawfully or knew they would act unlawfully, (3) a history of widespread abuse that put the warden on notice of a need to correct a constitutional violation, or (4) the existence of a custom or policy that caused the alleged Eighth Amendment violation. (Doc. 28 at 11-17). After the court entered its order dismissing the claims, Plaintiffs filed their Amended Complaint, which includes new allegations regarding ADOC policies and Warden Davenport's knowledge of a threat to Cummings's safety. (*See* Doc. 29). As discussed below, the court finds that even when the new allegations against Warden Davenport are considered, the Estate still has not stated plausible § 1983 claims against the Warden based on the failure to protect Cummings from Gayle.

As discussed in the court's prior order, to state a § 1983 claim for deliberate indifference based on a prison official's failure to protect an inmate from harm, a plaintiff must allege facts showing a prison official had actual knowledge of a substantial risk of serious harm to an inmate and disregarded that risk. (Doc. 28 at 12-13). In the Amended Complaint, the Estate alleges the following facts relating to Warden Davenport's knowledge of a risk to Cummings's safety:

> (1) Cummings witnessed a physical altercation between Gayle, who was convicted of murder, and another inmate. Then, Cummings was involved in an "incident" or "altercation" with Gayle that required correctional officers to separate the two inmates.

(2) Pursuant to AR-302 and AR-300, correctional officers filled out a report about the altercation or incident between Gayle and Cummings and a report about the earlier altercation between Gayle and another inmate. "Immediately following these incidents, those reports were produced to Warden Davenport pursuant to AR-302 and subsequently to Investigation and Intelligence Division pursuant to AR-300."[6]

(3) "After these incidents and following the administratively required reporting, Gayle and Cummings were never put into protective custody, put in separate dorms, nor was a plan implemented, or even formed, to physically separate each inmate away from the other, as required when put on notice through the reporting of violent incidents."

(4) Warden Davenport "had both objective and subjective knowledge that [Gayle] posed a significant risk of danger to Cummings due to the required reporting that corrections officers must make pursuant to AR-302."

(5) "Every violent incident triggers [AR-300] (Investigation and Intelligence Division and [AR-302] (Incident Reporting). The policies were followed by the officers, and the reports were made and disclosed to the Warden pursuant to the policy."

(Doc. 29 ¶¶ 4-6, 29-30). Even accepting those allegations as true and giving Plaintiffs the benefit of all reasonable factual inferences, the court finds that the Estate has not alleged facts sufficient to show that Warden Davenport had subjective knowledge of a substantial risk to Cummings's safety.

As an initial matter, the allegation that the warden had "objective and subjective knowledge that [Gayle] posed a significant risk of danger to Cummings due to the required reporting" is merely a conclusory statement of an element of the Estate's § 1983 claim for deliberate indifference. *See Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (citations omitted); *see also* Am. Compl. ¶ 30. Therefore, the court does not have to

---

[6] The court notes that the Index of Administrative Regulations available on the ADOC website does not include AR-302, nor is AR-302 available from the ADOC website listing the department's administrative regulations. *See* ADOC Index of Administrative Regulations (March 25, 2014), http://www.doc.state.al.us/docs/AdminRegs/AR01external.pdf; *see also* Administrative Regulations, http://www.doc.state.al.us/Regulations.aspx (last visited June 14, 2017).

accept the allegation as true, and it does not help support the claims against Warden Davenport. *See Iqbal*, 556 U.S. at 678.

Next, the Estate's allegations regarding the weekend "incident" or "altercation" between Gayle and Cummings are not sufficient to show that Gayle posed a substantial risk of serious harm to Cummings. Although the Estate alleges that the incident required correctional officers to separate Gayle and Cummings, that allegation does not show that Gayle posed a continuing risk to Cummings once the inmates were separated. (*See* Am. Compl. ¶ 4). The Estate's allegations also do not indicate whether the weekend incident or altercation between Gayle and Cummings was physical or verbal, if Gayle instigated the incident or altercation, or if Gayle threatened Cummings with more harm. (*See id.*). As a result, the Estate's allegations are not sufficient to show that Warden Davenport has subjective knowledge of a substantial risk of serious harm to Cummings even if the warden received and reviewed a report of the incident or altercation between Cummings and Gayle. Therefore, the Estate fails to state plausible § 1983 claims for deliberate indifference based upon Warden Davenport's alleged failure to protect Cummings from Gayle in violation of the Eighth Amendment.

Likewise, the Estate fails to state a plausible § 1983 claim against Warden Davenport for failure to train and negligent supervision even when the new allegations in the Amended Complaint are considered. The Estate alleges that the ADOC has regulations "designed to prevent violence and death for inmates like Cummings," and it further alleges that "[e]ither those policies were followed resulting in the Warden being put on notice [of the weekend incident between Cummings and Gayle], or the policies were not followed resulting in the systemic failure of oversight tantamount to the deliberate indifference to the rights of Mr. Cummings." (Doc. 29, ¶¶ 36). However, as discussed above, the Estate's allegations regarding the incident

between Cummings and Gayle are not sufficient to show that Gayle posed a substantial risk of serious harm to Cummings, and, therefore, the Estate's new allegations are not sufficient to save their § 1983 claim for failure to train and negligent supervision based on the failure to protect Cummings from Gayle.

Moreover, just as in the original Complaint, in the Amended Complaint, the Estate does not allege a history of widespread abuse, and the allegations regarding the handling of a single, weekend incident or altercation between Cummings and Gayle is not sufficient to show a history of widespread abuse or the existence of a custom or policy.[7] (*See* Am. Compl.); *see also Doe v. School Bd. of Broward County, Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (quotation omitted). Additionally, the Estate did not allege any facts to suggest that Warden Davenport directed correctional officers to act unlawfully or knew they would act unlawfully. Accordingly, the Estate has not alleged facts sufficient to state a plausible § 1983 claim based upon supervisory liability or for failure to train.

Based on the foregoing, and for the reasons stated in the court's prior Memorandum Opinion and Order, the Estate's § 1983 claims against Warden Davenport in his individual capacity based upon the failure to protect Cummings from Gayle are due to be dismissed pursuant to Rule 12(b)(6).

### D. Deliberate Indifference to Cummings's Medical Needs

The Estate asserts a § 1983 claim against Warden Davenport based on the Warden's alleged deliberate indifference to Cummings's medical needs in violation of the Eighth Amendment. (Am. Compl. ¶ 33). The court previously found that the Estate's allegations are

---

[7] The Estate includes statements regarding previous incidents and a history of violence at St. Clair in its brief in response to Warden Davenport's motion to dismiss, but the Estate did not include any allegations regarding those incidents in its Amended Complaint and did not ask for leave to further amend its complaint. (*See* Doc. 34 at 3-4).

sufficient to state a plausible § 1983 claim on this basis and, therefore, denied Warden Davenport's prior motion to dismiss as to the § 1983 claim for deliberate indifference to Cummings's serious medical needs. (Doc. 28 at 18-20, 25).

Warden Davenport argues that qualified immunity bars the Estate's Eighth Amendment claim against him. (Doc. 32 at 8-12). Qualified immunity shields a government official from "liability for civil damages if [his] actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, [a] government official must first prove that he was acting within his discretionary authority." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 1098 (11th Cir. 2014). "Once it is established that the defendant was acting within [his] discretionary authority, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003). However, "if a government official is acting wholly outside the scope of his discretionary authority, he is not entitled to qualified immunity regardless of whether the law in a given area was clearly established." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

"'To establish that the challenged actions were within the scope of his discretionary authority, [a government official] must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority.' [] To that end, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duty.'" *Gray v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting *Harbert Int'l, Inc.*, 157 F.3d at 1282). Here, Warden Davenport asserts that he was acting within his discretionary authority with regards to

all of his "dealings" with Cummings because "making decisions about the health care of an inmate is a duty normally associated with what correctional officials do . . . ." (Doc. 32 at 10). On the other hand, the Estate contends Warden Davenport acted outside of the scope of his authority.[8] (*See* Doc. 34 at 8).

While decisions regarding the provision of medical care for inmates may fall under the Warden's scope of authority, *see Edwards v. Alabama Dept. of Corrections*, 81 F.Supp. 2d 1242, 1252 (M.D. Ala. 2000), Warden Davenport did not cite any authority suggesting that a warden's authority to make decisions regarding the provision of medical care for inmates extends to making end-of-life decisions for inmates. (*See* Doc. 32 at 8-12). Moreover, the court has found no such authority. Instead, Alabama statutes indicate that making end-of-life decisions for an inmate is not within a warden's scope of authority, unless an inmate has an advance directive that designates the warden as a health care proxy with the power to make end-of-life decisions, or if the warden is a judicially-appointed a guardian for the inmate and "the appointment specifically authorizes [him] to make decisions regarding the withholding of life-sustaining treatment . . . ." *See* Ala. Code §§ 22-8A-4, 6 & 11(d)(1).[9] There is nothing before the court to

---

[8] Qualified immunity is an affirmative defense to the Estate's § 1983 claim against Warden Davenport, *see, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); the Estate is not required to negate the defense in its complaint. *La Grasta v First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great Am. Comm. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

[9] Alabama Code § 22-8A-4 addresses living wills and advance directives for health care and provides, among other things, that "[a] competent adult may execute [] a living will that includes a written health care proxy designation appointing another competent adult to make decisions regarding the providing, withholding, or withdrawal of life-sustaining treatment . . . ." *Id.* at § 22-8A-4(b). Next, Alabama Code § 22-8A-6 provides that a designated health care proxy shall make decisions regarding the withholding or withdrawing of life-sustaining treatment "according to the specific instructions or directions given to him . . . by the individual making the designation, [or] [i]n the absence of specific directions or guidance, the designated proxy shall make those decisions that conform as closely as possible to what the patient would have done or

15

indicate that Cummings had an advance directive designating Warden Davenport as his health care proxy or that the warden was a judicially-appointed guardian for Cummings. As a result, the court finds that Warden Davenport has not met his burden of showing that he was acting within the scope of his authority when he allegedly authorized or directed UAB Hospital to remove Cummings's life support. Therefore, at this stage of the case, Warden Davenport has not shown he is entitled to qualified immunity.

Based on the foregoing, and for the reasons stated in the court's prior Memorandum Opinion and Order, Warden Davenport's motion to dismiss is denied as to the Estate's § 1983 claim based on Warden Davenport's alleged deliberate indifference to Cummings's serious medical need in violation of the Eighth Amendment.

### E. Wrongful Death

The Estate asserts a state law wrongful death claim against Warden Davenport based on based on allegations that (1) he failed to protect Cummings from Gayle despite having actual knowledge from the incident report that Gayle posed a threat to Cummings's safety and (2) he adopted a policy of not adequately responding to incidents that occur over the weekend. (*See* Am. Compl. ¶ 38). As discussed above, the allegations regarding the weekend incident or altercation between Cummings and Gayle are not sufficient to demonstrate that Warden Davenport knew Gayle posed a substantial risk to Cummings's safety. (*See* pp. 13-16, *supra*). Additionally, the allegations in the Amended Complaint are not sufficient to show a policy or custom of not adequately responding to incidents that occur on weekends. (*See* Am. Compl.). As a result, and for the reasons discussed in the court's prior Memorandum Opinion and Order,

---

intended under the circumstances . . . ." *Id.* Finally, Alabama Code § 22-8A-11 provides that in the absence of an advance directive or designated health care proxy, a surrogate may be designated to make decisions regarding the withholding or withdrawing of life-sustaining treatment if certain conditions are met. *Id.*

the Estate has not stated a plausible wrongful death claim, and the claim is due to be dismissed pursuant to Rule 12(b)(6).

## V. CONCLUSION

Based on the foregoing, and for the reasons stated in the court's prior Memorandum Opinion and Order (Doc. 28), Warden Davenport's motion to dismiss, (Doc. 32), is due to be **DENIED IN PART and GRANTED IN PART**. The warden's motion is due to be denied as to the Estate's § 1983 claim based on deliberate indifference for interfering with Cummings's serious medical needs in violation of the Eighth Amendment, and this claim may proceed. The balance of Warden Davenport's motion to dismiss is due to be granted, and Plaintiffs' remaining claims against Warden Davenport are due to be dismissed. An order consistent with the court's findings will be entered.

**DATED** this 31st day of July, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge